**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | |
|---|---|
| JONATHAN HICKERSON, | Case No. 5:25-cv-12884 |
| *Plaintiff*, | Judith E. Levy<br>United States District Judge |
| v. | |
| HEIDI WASHINGTON, et al., | Patricia T. Morris<br>United States Magistrate Judge |
| *Defendants*. | |
| _____/ | |

**REPORT AND RECOMMENDATION**
**TO GRANT IN PART AND DENY IN PART DEFENDANTS'**
**MOTION FOR SUMMARY JUDGMENT AND TO DISMISS (ECF No. 25)**

**I.     RECOMMENDATION**

For the following reasons, **IT IS RECOMMENDED** that the Court **GRANT IN PART** Defendants' joint motion for summary judgment and to dismiss (ECF No. 25) and **DISMISS** Plaintiff's First and Sixth Amendment denial of access to the courts claims, and **DENY IN PART** the motion as to Plaintiff's other claims.  If these recommendations are adopted, the Undersigned will enter a scheduling order setting deadlines for discovery and dispositive motions.

**II.     REPORT**

**A.     Background**

Plaintiff Jonathan Hickerson has been a prisoner in the custody of the

1

Michigan Department of Corrections (MDOC) for over ten years.  Plaintiff has been blind since a failed surgery in 2018.  (ECF No. 21, PageID.230–31).  Generally, Plaintiff alleges he has been denied many services other prisoners are afforded due to his disability.  (ECF No. 21).  In his amended complaint, Plaintiff brings claims under 42 U.S.C. § 1983, alleging he has been unconstitutionally denied access to the courts, freedom of speech, and procedural due process.  He also brings claims under the Americans with Disabilities Act (ADA) and Rehabilitation Act, alleging he has been denied reasonable accommodations to access the same services offered to sighted prisoners.  Finally, he brings a state law claim under Michigan's Persons with Disabilities Civil Rights Act (PDCRA).

All remaining Defendants except Todd Wendt filed a motion to dismiss or, in the alternative, motion for summary judgment on the basis of exhaustion.  (ECF No. 25).  In it, they argue some of Plaintiff's claims are barred by the statute of limitations; Plaintiff fails to state a claim in his amended complaint; Plaintiff's claims are barred because he failed to exhaust his administrative remedies; and the Court should decline supplemental jurisdiction over his state-law claim if it dismisses his federal claims.  Plaintiff responded, and the motion is now ready for consideration.  (ECF No. 27, 30).

## B.    Legal Standards

### 1.    Motion to Dismiss

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) challenges the legal sufficiency of the complaint regarding whether it states a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). When deciding a motion under this subsection, a "court must construe the complaint in the light most favorable to the plaintiff, accept all the factual allegations as true, and determine whether the plaintiff can prove a set of facts in support of its claims that would entitle [him] to relief." *Bovee v. Coopers & Lybrand C.P.A.*, 272 F.3d 356, 360 (6th Cir. 2001). A complaint must be dismissed pursuant to Rule 12(b)(6) if the complaint does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

Under Rule 12(b)(6), "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555 (citations omitted). Even though a complaint need not contain "detailed" factual allegations, its "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (citations omitted). Additionally, when an action is brought under a civil rights statute, a court must scrutinize a motion to dismiss with special care. *Warman v. Mount St. Joseph Univ.*, 144 F.4th 880, 889 (6th Cir. 2025).

A court need not accept as true legal conclusions or unwarranted factual

inferences contained in the complaint. *Grindstaff v. Green*, 133 F.3d 416, 421 (6th Cir. 1998). "Determining whether a complaint states a plausible claim for relief" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). For the purposes of a motion to dismiss, if two opposing inferences can plausibly be drawn from the alleged facts, a court's obligation is to construe the complaint in the light most favorable to the plaintiff and accept his or her inference as true. *Sutton v. Metro. Gov't of Nashville and Davidson Cnty.*, 700 F.3d 865, 873 (6th Cir. 2012).

Further, although a court primarily considers the factual allegations contained in the complaint, "'matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint, also may be taken into account.'" *Nieman v. NLO, Inc.*, 108 F.3d 1546, 1554 (6th Cir. 1997) (quoting 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1357 (2d ed. 1990)). The Sixth Circuit has specifically "held that 'documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [the plaintiff's] claim.'" *Weiner v. Klais & Co.*, 108 F.3d 86, 89 (6th Cir. 1997) (quoting *Venture Assoc. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)); *Yeary v. Goodwill Indus.–Knoxville, Inc.*, 107 F.3d 443, 445 (6th Cir. 1997).

Finally, "[t]o plausibly state a cause of action under 42 U.S.C. § 1983, a

plaintiff must plead two elements: '(1) deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under color of state law.'" *Whitacre v. Adult Parole Auth.*, No. 23-cv-3625, 2024 WL 4750214, at *2 (S.D. Ohio Nov. 12, 2024) (quoting *Hunt v. Sycamore Cmty. Sch. Dist. Bd. of Educ.*, 542 F.3d 529, 534 (6th Cir. 2008)).

### 2.    Motion for Summary Judgment

Summary judgment is appropriate where the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact is one "that might affect the outcome of the suit under the governing law . . . ." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A court's role at summary judgment is not to weigh the evidence but to determine whether "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 249–50. Accordingly, a court views all evidence and reasonable inferences in favor of the nonmoving party. *Couzens v. City of Forest Park*, 114 F.4th 571, 577 (6th Cir. 2024).

"Because defendants carry the burden of proof for exhaustion, they bear an initial summary judgment burden that is higher in that they must show that the record contains evidence satisfying their burden of persuasion and that no reasonable jury would be free to disbelieve it." *Morgan v. Trierweiler*, 67 F.4th 362, 366 (6th Cir.

2023) (cleaned up); *see also Lamb v. Kendrick*, 52 F.4th 286, 295 (6th Cir. 2022) (holding defendants have burden to present evidence showing plaintiff's ability to exhaust was not hindered when plaintiff contends he was prevented from exhausting).  Thus, summary judgment is appropriate only if there is no genuine dispute of material fact that the plaintiff has failed to exhaust.  *Morgan*, 67 F.4th at 366.  But the nonmoving party cannot rebut a Rule 56 motion by merely alleging a genuine factual dispute exists.  Fed. R. Civ. P. 56(e).  Instead, the nonmoving party must show "the evidence is such that a reasonable jury could return a verdict" in their favor.  *Anderson*, 477 U.S. at 248.

### C.    Statute of Limitations

Plaintiff filed his complaint on September 2, 2025.  (ECF No.1, PageID.14). Both parties agree the claims at issue here are subject to a three-year statute of limitations.  (ECF No. 25, PageID.120; ECF No. 27, PageID.263).  Defendants thus argue that any claims which accrued prior to September 2, 2022, are untimely and should be dismissed.  (ECF No. 25, PageID.122).  However, under the "continuing wrongs doctrine," Plaintiff argues that the Court may address conduct outside of the applicable statute of limitations.

Although the continuing violation doctrine is rarely extended to § 1983 actions, it may be invoked if the plaintiff

> shows a longstanding and demonstrable policy of discrimination.  This
> requires a showing by a preponderance of the evidence that some form

6

of intentional discrimination against the class of which plaintiff was a member was the standing operating procedure.  The plaintiff must demonstrate something more than the existence of discriminatory treatment in his case.

*Katz v. Village of Beverly Hills*, 677 F. App'x 232, 236 (6th Cir. 2017) (citation modified).

Plaintiff may very well have a difficult time sufficiently demonstrating such a policy at trial or on motion for summary judgment, but the Undersigned finds that this issue is largely irrelevant at the motion to dismiss stage.  Many of Plaintiff's claims regard alleged denials of requests for accommodations due to his blindness. Generally, since his blindness began in 2018, Plaintiff alleges he has "consistently communicated with each Defendant concerning his needs," including one or more letters sent each year to Defendants.  (ECF No. 21, PageID.244–45).  Whether these repeated requests and denials were each "discrete discriminatory acts" (which would preclude liability for any violations prior to the state of limitations) or are part of a "longstanding and demonstrable policy of discrimination" (which would allow the Court to consider liability for the entire period of discrimination alleged) will only be relevant when considering damages.  *Austion v. City of Clarksville*, 244 F. App'x 639, 647 (6th Cir. 2007); *Sharpe v. Cureton*, 319 F.3d 259, 268–69 (6th Cir. 2003). At the motion to dismiss stage, taking all reasonable inferences in Plaintiff's favor, he has sufficiently alleged a continuing wrong.

Additionally, the Undersigned agrees with Plaintiff that each denial of his

requested accommodations (which have allegedly happened each year, several times a year) could give rise to a new cause of action, resetting the statute of limitations for at least that denial.  *Accord McBride v. Mich. Dep't of Corr.*, No. 15-cv-11222, 2015 WL 13221229, at \*7 (E.D. Mich. Oct. 30, 2015) ("Finally, defendants' argument is flawed as it essentially seeks to impose a permanent waiver of claims of an ongoing or repetitive nature that are not raised when the very first instance of alleged wrongdoing occurs."), *report and recommendation adopted*, 2016 WL 1156740 (E.D. Mich. Mar. 24, 2016).  The relevant questions at this stage then are whether Plaintiff has actually stated a claim and whether he has exhausted his administrative grievances, which are discussed below.

### D.    Exhaustion

Defendants argue Plaintiff failed to exhaust any of his claims prior to filing suit.  (ECF No. 25, PageID.128).  Because exhaustion is a prerequisite to filing suit, the Undersigned will address this argument before turning to Defendants' arguments for dismissal.  *Accord Kyles v. Keefe Commissary Network*, No. 14-cv-11907, 2015 WL 1637466, at \*3 (E.D. Mich. Apr. 13, 2015).

### 1.    Grievance Process

Under the Prison Litigation Reform Act (PLRA), prisoners may not bring actions against prison officials to challenge conditions of their confinement under § 1983, "or any other Federal law," without first exhausting all available

administrative remedies.  42 U.S.C. § 1997e(a); *Porter v. Nussle*, 534 U.S. 516, 524 (2002).  Prisoners must exhaust their administrative remedies "using all steps that the agency holds out, and do[] so *properly* (so that the agency addresses the issues on the merits)."  *Woodford v. Ngo*, 548 U.S. 81, 90 (2006) (internal quotation omitted) (emphasis in original).  "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings."  *Id.* at 90–91.  "'[I]t is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion.'"  *Walker v. Washington*, No. 23-2104, 2025 WL 1145719, at *2 (6th Cir. Apr. 15, 2025) (quoting *Jones v. Bock*, 549 U.S. 199, 218 (2007)).  "[T]he primary purpose of a grievance is to alert prison officials to a problem, not to provide personal notice to a particular official that he may be sued; the grievance is not a summons and complaint that initiates adversarial litigation."  *Jones*, 549 U.S. at 219 (quotation omitted).

In Michigan, a prisoner generally must proceed through resolution of a Step III appeal prior to filing a civil suit.  *See Ryan v. G. Robert Cotton Corr. Facility*, No. 22-1808, 2023 WL 6059802, at *2 (6th Cir. May 15, 2023).  Policy Directive 03.02.130 outlines MDOC's three-step, internal process for prisoners to raise formal

9

complaints.  (ECF No. 25-3).[1]  Pursuant to the directive, a prisoner is required to first informally "attempt to resolve the issue with the staff member involved within two business days after becoming aware of a grievable issue" and if unsuccessful, file a Step I grievance within five business days.  (*Id.* at PageID.156–57).  If a prisoner is dissatisfied with the disposition of the Step I grievance or did not receive a timely response, then he can file a Step II grievance.  (*Id.* at PageID.158).  Similarly, if a prisoner is dissatisfied with the Step II response or did not receive a timely response, he has ten days to file a Step III grievance.  (*Id.* at PageID.159).  A grievance may be rejected for procedural reasons such as untimeliness or failing to attempt to resolve the issue with the staff member prior to filing a grievance.  (*Id.* at PageID.154–55).

### 2.    Discussion

Defendants have submitted nine grievances Plaintiff completed through Step III in the three years prior to this lawsuit. (ECF No. 25-5).  They argue none of them exhausted the claims he asserts against Defendants.  Plaintiff contends his concerns related to desired accommodations were—per MDOC policy—not part of the normal grievance process and the procedure for exhausting those claims is different.

---

[1] Plaintiff's grievances fall under several versions of MDOC's policy.  However, MDOC Defendants argue there are no substantive differences between the policies that have a bearing on this case and only cite to the 2023 version.  (ECF No. 25, PageID.129).  The Undersigned will do the same unless a material difference is identified.

(ECF No. 27, PageID.272–73).

Per MDOC Policy 03.02.130, effective September 25, 2023:

E.  Initial requests for reasonable accommodations under the Americans with Disabilities Act *shall not be processed as grievances* under this policy but shall be *forwarded to the Worksite ADA Coordinator for processing* under PD 04.06.155 "Offenders With Disabilities." *Appeals* of a final determination *shall not be processed as grievances* under this policy but *shall be forwarded to the Worksite ADA Coordinator* to be processed under PD 04.06.155 "Offenders With Disabilities."

F. If a Step I grievance is received regarding a *previously approved* ADA accommodation, the Grievance Coordinator shall assign the Worksite ADA Coordinator as responder.  The Worksite ADA Coordinator shall investigate, compile evidence, draft a proposed response, and forward it to the Statewide ADA Coordinator to receive direction with respect to a final response.  The Worksite ADA Coordinator shall then forward the final Step I response to the Grievance Coordinator.  If the Grievance Coordinator intends to reject the grievance for reasons defined in policy, they shall forward the draft rejection to the Manager of the Grievance Section, Office of Legal Affairs (OLA), for guidance.

(ECF No. 25-3, PageID.153 (emphasis added)).  Prisoners use form CSJ-247A to file a grievance pursuant to 03.02.130.  (*Id.* at PageID.156).  On the other hand, policy directive 04.06.155 directs prisoners to use form CSJ-562 to "mak[e] a request for a reasonable accommodation," and send it "to the Worksite Offender ADA Coordinator."  MDOC Policy Directive 04.06.155 at 2.[2]  In turn, "[o]nly the

---

[2] Available at https://www.michigan.gov/corrections/-/media/Project/Websites/corrections/Files/Policy-Directives/PDs-04-Institutional-Operations/PD-0406-Medical-and-Mental-Health-Services/04-06-155-Offenders-With-Disabilities.pdf?rev=7bfd9d960 4e4460995225e4de726f983.  *See also Skellett v. Washington*, No. 19-cv-703, 2020 WL 3396622, at *2

Statewide Offender ADA Coordinator may make a final determination on a reasonable accommodation request," and there is an appeal process described within the policy for when requests are denied. *Id.* at 3. Importantly, after the appeal, "[a]n offender cannot grieve a final determination." *Id.*; *see also Wilson v. Mich. Dep't of Corr.*, No. 18-cv-10008, 2019 WL 5800292, at *7 (E.D. Mich. June 6, 2019) (showing the policy effective in 2019 also included this clause), *report and recommendation adopted in part*, 2019 WL 3759424 (E.D. Mich. Aug. 9, 2019).

There is some difference of opinion as to whether policy 04.06.155 operates to remove requests for accommodations from the regular grievance process under policy 03.02.130. In other words, if a prisoner complies with policy 04.06.155 for filing and appealing decisions made about reasonable accommodations, has he exhausted his administrative remedies under the PLRA? Or must he first comply with the procedures in 04.06.155, and then file a grievance through all three steps pursuant to 03.02.130? For the reasons explained below, the Undersigned concludes satisfying the procedures in 04.06.155 alone properly exhausts administrative remedies related to claims asserting an improper denial of reasonable accommodations.

First, Defendants agree that with the September 25, 2023 changes to policy

---

(W.D. Mich. June 19, 2020) (noting the policy became effective on August 1, 2018). Plaintiff also submitted a reasonable accommodation request form he filled out in 2019. (ECF No. 27-1).

03.02.130, all accommodations requests filed and completed under policy 04.06.155 are diverted from 03.02.130 and are therefore properly exhausted when the procedures in 04.06.155 are followed.  (*See* ECF No. 30, PageID.312 (conceding Plaintiff is correct that the September 2023 version of policy 03.02.130 diverted requests for reasonable accommodations to the ADA coordinator)).  However, a question remains as to exhaustion regarding accommodations requests that were filed and completed prior to the September 25, 2023 changes to 03.02.130.  While it is true that policy 03.02.130 did not contain the language block quoted above prior to September 25, 2023, the Undersigned nonetheless concludes that properly completed appeals through the ADA reasonable accommodations process satisfy the exhaustion requirement.

A comprehenesive reading of the policy shows that it has always been meant to divert requests and appeals regarding reasonable accommodations away from the normal grievance process—even before policy 03.02.130 was changed to explicitly acknowledge this fact.  As of August 1, 2018, MDOC promulgated a new policy directive concerning offenders with disabilities seeking reasonable accommodations.  *See Wilson*, No. 18-cv-10008, ECF No. 35, PageID.221–23 (E.D. Mich. Nov. 14, 2018) (2018 policy attached).  It is substantially similar in its procedures for requesting reasonable accommodations and appealing denials as the 2022 version discussed above.  Importantly, it also stated that "[a]n offender cannot

13

grieve a final determination" of their request for reasonable accommodations. *Id.* Per MDOC policy then, Plaintiff was required to go through a separate process for requesting reasonable accommodations that could not be processed as grievances.

This is also shown through Plaintiff's own experience. Plaintiff attached a grievance he tried to file in 2019 requesting certain accommodations. (ECF No. 27-1, PageID.291–94). The grievance coordinator responded: "Your concerns pertain to a Title II ADA request and should be addressed through the Worksite Offender ADA Coordinator using the attached form [(CSJ-562)]." (*Id.* at PageID.289). Plaintiff filled out the form and the appeal, both of which were substantially denied. (*Id.* at PageID.284–88). It is thus clear that even in 2019, MDOC officials were steering Plaintiff away from the grievance process for many of the issues he raises in his complaint and toward the reasonable accommodations process detailed above. Therefore, the Undersigned concludes that exhaustion could have been accomplished through the reasonable accommodations procedure laid out in policy directive 04.06.155. *Cf. Miles v. Michigan*, No. 23-cv-31, 2024 WL 1200182, at *11–*12 (W.D. Mich. Feb. 20, 2024) (finding genuine issue of material fact precluding summary judgment on exhaustion where plaintiff had filed a request for reasonable accommodation pursuant to 04.06.155), *report and recommendation adopted*, 2024 WL 1198265 (W.D. Mich. Mar. 20, 2024).

The Undersigned has been unable to find a prior opinion which has thoroughly

considered the relationship between these two policies.  In *Wilson*, the court stated:

> To the extent that Wilson claims he was not required to use the three-step grievance process to exhaust his ADA claims, he is incorrect.  It is well-settled that the PLRA's exhaustion requirement applies to all actions brought under § 1983 or "any other Federal law," including the ADA.  *See Basat v. Caruso*, 2008 WL 275679, at *3 (E.D. Mich. Jan. 31, 2008) (citing *Porter v. Nussle*, 534 U.S. 516 (2002)); *Thompson v. Robertson*, 2017 WL 1048018, at *5 (M.D. Tenn. Mar. 20, 2017) ("In order to bring a federal lawsuit based on prison officials' violation of the Americans With Disabilities Act or other federal law, the plaintiff must first seek a reasonable accommodation from the appropriate prison authorities, bring a grievance in accordance with the prison's Grievance Policy if such requests are not satisfactorily resolved, and pursue the denial or unfavorable outcome of the grievances through a Level III appeal."); *O'Guinn v. Lovelock Corr. Ctr.*, 502 F.3d 1056, 1061–62 (9th Cir. 2007) (interpreting § 1997e(a) "as requiring prisoners to exhaust prison administrative remedies for claims under Title II of the ADA").

*Wilson*, 2019 WL 5800292, at *6.  However, *Wilson's* citations do not stand for the point of law reached.  True, the PLRA's exhaustion requirement applies to all claims brought under federal law.  *Id.* (citing *Basat*, 2008 WL 275679, at *3).  But it is not necessarily true that policy 03.02.130 is the *only* way to exhaust administrative remedies for all claims.  For example, MDOC allows prisoners to exhaust claims regarding sexual abuse or harassment pursuant to policy 03.03.140 instead of policy 03.02.130.  *E.g., Haines v. Miniard*, 22-cv-10717, 2023 WL 3559608, at *2–*3 (E.D. Mich. Apr. 24, 2023) (describing the process for exhausting a Prison Rape Elimination Act claim), *report and recommendation adopted*, 2023 WL 3550081 (E.D. Mich. May 17, 2023).  Therefore, it is also possible that MDOC allows another

method of exhaustion for claims related to reasonable accommodations.

*Wilson's* citation to *Thompson v. Robertson*, 2017 WL 1048018, at \*5 (M.D. Tenn. Mar. 20, 2017)—which is its sole basis for concluding a prisoner must utilize the procedures in both 04.06.155 and 03.02.130 to exhaust—is unconvincing. *Thompson* was a Middle District of Tennessee case that discussed Tennessee Department of Corrections policies. These are not the same as MDOC policies and, even so, the case predated MDOC's 2018 policy on reasonable accommodations. Moreover, *Wilson* found that no decision issued under policy 04.06.155 was the subject of Wilson's complaint. There is therefore no legal basis for *Wilson's* conclusion that a prisoner must pursue a remedy through both policies in order to properly exhaust his administrative remedies. Other cases the Undersigned has found discussing policy 04.06.155 suffer similar flaws. *See Diemond v. Mich. Dep't of Corr.*, No. 20-cv-473, 2021 WL 2942604, at \*4 (W.D. Mich. May 25, 2021) (citing *Basat* and *Thompson*, in addition to a Ninth Circuit case for the same proposition as *Basat*), *report and recommendation adopted without discussion of policy 04.06.155*, 2021 WL 2587586 (W.D. Mich. June 24, 2021); *Plaster v. Washington*, No. 23-cv-591, 2024 WL 1446598, at \*13 (W.D. Mich. Feb. 8, 2024) (citing *Diemond*), *report and recommendation adopted*, 2024 WL 1229903 (W.D. Mich. Mar. 22, 2024). Based on a reading of the policy, its prohibition on grieving denials of reasonable accommodations, and the absence of persuasive or controlling

16

authority otherwise, the Undersigned therefore concludes Plaintiff *could* have properly exhausted claims related to reasonable accommodations through policy 04.06.155 since it became effective in 2018.

The question then is whether Plaintiff's claims were properly exhausted through either process. The Undersigned concludes the record is insufficient to find, as a matter of law, either way. Plaintiff's counsel informs the Court that he is not in possession of many of Plaintiff's more recent accommodations requests. (ECF No. 27, PageID.273). Indeed, because it is significantly easier for prison administrators to show a failure to exhaust rather than a prisoner to prove exhaustion, it is Defendants' burden to present evidence showing a plaintiff's failure to exhaust and that they were not prevented from exhausting administrative remedies. *Lamb*, 52 F.4th at 295. Defendants submitted an affidavit with their reply brief, averring Plaintiff has not appealed any requests for reasonable accommodations since September 25, 2023, and attaching the requests he made since then. (ECF No. 31). Based on the Undersigned's above analysis, the relevant date for exhaustion precedes September 25, 2023. The affidavit and supporting documents, therefore, are insufficient to show Plaintiff has not properly exhausted his claims. Furthermore, there is some question—unaddressed by Defendants—as to whether the grievance process was fully available to Plaintiff due to his disability. (*See, e.g.*, ECF No. 21, PageID.246).

In addition to Defendants' arguments regarding the accommodations policy, the Undersigned disagrees with their reasoning on some of Plaintiff's grievances filed pursuant to 03.02.130.  For example, Plaintiff argues that since he requests accommodations every year and is denied them every year, there is a new cause of action each time he is denied. (ECF No. 27, PageID.276–77).  Nevertheless, because the MDOC grievance policy does not allow duplicative grievances, the process became unavailable to him after he filed his first grievance in 2019.  (*Id.*). Defendants respond:

> Not only is this argument unsupported, it leads to unreasonable and even absurd results.  For one, there is no limiting principle on [Plaintiff's] argument—for example, a prisoner who grieved a 2000 claim on catching a cold due to poor ventilation would not need to grieve a 2020 claim on contracting COVID due to poor ventilation. Under [Plaintiff's] logic, once a prisoner exhausts a claim in a grievance, the prisoner would have no need to pursue any grievance on any subsequent claim arising out of a latter incident as long as the prisoner subjectively believes the subsequent claim was sufficiently similar to the original claim.

(ECF No. 30, PageID.314).  While this argument might make some sense, on the very next page Defendants argue, "Next, [Plaintiff] challenges the rejections of JCF-449 and JCF-431 as untimely.  But both grievances involve incidents that well predated their respective filings and overlapped with [Plaintiff's] previous claims— including those he raised in his 2019 grievance.  As such, JCF-449 and JCF-431 were correctly rejected as untimely." (*Id.* at PageID.315–16).  Defendants thus seek to have their cake and eat it too.

Grievance 449 discussed Plaintiff's stated need for appropriate accommodations, including (1) the ability to use his Jpay kiosk; (2) full use of his tablet; (3) the security of his personal property; (4) the ability to conduct adequate legal research; and (5) the ability to prepare legal documents. (ECF No. 25-5, PageID.213–15). These are many of the claims he brings in this case. Defendants rejected the grievance as untimely. But Plaintiff's whole case stems from the fact that he remains unable to access the same resources as other prisoners to this day, that he has continually requested such accommodations from Defendants since 2019, and that they continually refuse him such accommodations.

Defendants' rejection of his grievance as untimely results in the same absurdity they warn Plaintiff's argument will result in. According to Defendants' analogy, Plaintiff was trying to complain of his 2020 COVID case (the current refusal of reasonable accommodations) when he filed grievance 449 but Defendants rejected the grievance as untimely because he had also had a cold in the year 2000 that was previously grieved (the 2019 grievance). But instead of looking at Plaintiff's current grievance and assessing the merits, Defendants denied his grievance for a procedural reason, thus forever closing the door on his efforts to gain reasonable accommodations and comply with the grievance procedure. This is an untenable position for Defendants to argue. *Accord Diemond v. Nagy*, 752 F. Supp.3d 862, 868 (E.D. Mich. 2024) ("If Diemond is forevermore barred from

grieving the alleged denial of reasonable accommodations because IBC-1324 was vague, then that issue is non-grievable for him. And in general MDOC should not be allowed to reject grievances as duplicative of grievances that were never addressed on the merits—a machination that 'thwart[s] inmates from taking advantage of a grievance process.'" (quoting *Ross v. Blake*, 578 U.S. 632, 644 (2016))).

Plaintiff argued in 2019 that many of his requests had not been addressed by the ADA coordinator. (ECF No. 27-1, PageID.286). While he may have been able to bring his claims then, Plaintiff instead continued to try for years to engage in the prison's process to seek reasonable accommodations. (*E.g.*, ECF No. 25-5, PageID.213). On this record, it appears Defendants ignored some of his initial requests/grievances, and then improperly denied them for procedural reasons thereafter. *See Page v. Nenrod*, No. 22-cv-11571, 2023 WL 9065217, at *5 (E.D. Mich. Nov. 28, 2023) ("Grievances *properly* rejected as untimely do not exhaust an inmate's administrative remedies." (emphasis added)), *report and recommendation adopted*, 2024 WL 37928 (E.D. Mich. Jan. 3, 2024). In that instance, Plaintiff would have been excluded from the grievance process, making exhaustion impossible. But without the full record of Plaintiff's grievances and requests for reasonable accommodations from 2019, it is impossible to say whether Plaintiff's requests are now untimely.

While the Undersigned does not suggest that a prisoner can continuously grieve an issue and require MDOC to repeatedly address that issue on the merits, there is no evidence in this record of whether Plaintiff properly exhausted each claim and whether Defendants properly denied them—whether on the merits or for procedurally proper reasons.  It is Defendants' burden to present such evidence, and the Undersigned concludes they have failed to do so here where there are substantial questions as to the complaints Plaintiff has filed through both the regular grievance process and the reasonable accommodations process.  *Accord Moore v. Brown*, No. 23-cv-11298, 2024 WL 3329126, at *8 (E.D. Mich. May 15, 2024) ("To prove the absence of any grievances that could have exhausted the prisoner's claims, a defendant must do more than pluck a few inadequate grievances from the prisoner's record."), *report and recommendation adopted*, 2024 WL 2817536 (E.D. Mich. June 3, 2024).  Therefore, the Undersigned recommends denying Defendants' motion for summary judgment based on exhaustion.

### E.    Motion to Dismiss

Defendants argue Plaintiff has failed to state claims for denial of access to the courts, free speech, and due process.  (ECF No. 25, PageID.122).  Defendants do not argue Plaintiff has failed to state a claim under the ADA or Rehabilitation Act.[3]

---

[3] Because the Undersigned has recommended Defendants' motion for summary judgment based on exhaustion be denied, these claims will survive if the recommendation is adopted. Therefore, because there are still federal claims this Court has jurisdiction over, the

### 1.      Access to the Courts

Plaintiff alleges he has been denied access to the courts guaranteed by both the First and Sixth Amendments in his state court post-conviction proceedings and in this case because his ability to communicate with counsel has been hampered by the denial of reasonable accommodation requests; the system that is available to him purportedly waives his attorney-client privilege; and he is unable to review pleadings and other litigation-related documents. (ECF No. 21, PageID.247–48).

The First Amendment right of access to the courts includes prohibiting prison officials from erecting barriers that may impede such access. *Resch v. Campfield*, No. 21-cv-293, 2021 WL 4739172, at *12 (W.D. Mich. Oct. 12, 2021). In order to state a violation of the right of access to the courts claim, a plaintiff must show he or she suffered an actual injury. *Lewis v. Casey*, 518 U.S. 343, 351 (1996). Meaningful access is the touchstone of the right of access to the courts, so a prisoner must "demonstrate that the alleged shortcomings . . . hindered his efforts to pursue a legal claim." *Id.* This, in turn, requires that the underlying action the plaintiff alleges he was or is being denied access to pursue must be non-frivolous and is an element that must be described in the complaint. *Christopher v. Harbury*, 536 U.S. 403, 415 (2002). Additionally,

---

Undersigned recommends denying Defendants' request to decline jurisdiction over Plaintiff's state law claim. (ECF No. 25, PageID.139 (requesting dismissal of state law claim only if the Court dismisses all federal claims)).

22

the complaint must identify a remedy that may be awarded as recompense *but not otherwise available* in some suit that may yet be brought. There is, after all, no point in spending time and money to establish the facts constituting denial of access when a plaintiff would end up just as well off after litigating a simpler case without the denial-of-access element.

*Id.* (emphasis added). These claims have four elements: "(1) a non-frivolous underlying claim; (2) obstructive actions by state actors; (3) substantial prejudice to the underlying claim that cannot be remedied by the state court; and (4) a request for relief which is now otherwise unattainable." *Jackson v. City of Cleveland*, 64 F.4th 736, 746 (6th Cir. 2023) (citation modified).

Plaintiff has failed to specifically identify a remedy that is otherwise unavailable except through an access to the courts claim. (*See* ECF No. 21, PageID.247–48). For example, if he prevails on his ADA or Rehabilitation Act claims, he may be able to obtain the injunctive and monetary relief he seeks to remedy his alleged difficulty in communicating with counsel, reviewing his pleadings, and researching his cases. *See Christopher*, 536 U.S. at 421–22. There is, therefore, "no point" in litigating this access to the courts claim when litigating the ADA claim will be simpler. *Id.* at 415.

Plaintiff's Sixth Amendment access to the court claim is also precluded. Plaintiff brings this claim with respect to his state court post-conviction proceedings. (ECF No. 27, PageID.270). But the Sixth Amendment, by its terms, applies only to criminal prosecutions, and post-conviction proceedings are civil in nature. *Karhani*

23

*v. Meijer*, 270 F. Supp. 2d 926, 932–33 (E.D. Mich. 2003); *Irick v. Bell*, No. 98-cv-666, 2001 WL 37115951, at *50 (E.D. Tenn. Mar. 30, 2001); *accord Kirby v. Dutton*, 794 F.2d 245, 246 n.1 (6th Cir. 1986) (collecting cases).  Plaintiff's denial of access to the courts claims should therefore be dismissed.

### 2.      Freedom of Speech

Plaintiff alleges he is denied the ability to access a significant amount of reading material that other sighted prisoners may access in violation of his First Amendment rights.  (ECF No. 21, PageID.248–49).  More specifically, Plaintiff alleges sighted prisoners are able to purchase books through retailers such as Amazon but that he is unable to purchase books in a format accessible to him, such as audio books or those written in braille.  (*Id.* at PageID.242).  Additionally, although Plaintiff would be able to request books in braille if he passed a "proficiency test," MDOC does not offer the proficiency test necessary to obtain these accommodations.  (*Id.* at PageID.241).

"The First Amendment protects the right to receive information and ideas, which, as applicable in the prison context, extends to the right to receive mail and to access reading material."  *Bethel v. Jenkins*, 988 F.3d 931, 938 (6th Cir. 2021) (quotation omitted).

> Because lawful incarceration necessarily limits an individual's constitutional rights while in prison, a prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system.

24

> And given that the realities of running a penal institution are complex and difficult, prison officials are afforded wide-ranging deference in their decisions regarding prison administration and regulation as courts are generally ill-equipped to deal with these problems.

*Id.* (citation modified).

Defendants do not address Plaintiff's specific First Amendment claim in their motion to dismiss. (ECF No. 25, PageID.125–26). Instead, Defendants summarily argue Plaintiff needs to specifically identify a policy which censored or prohibited his protected speech. But their citation is to a case wholly unrelated to the allegations at issue here. (*Id.* (citing *Pratt v. Hetrick*, No. 24-cv-107, 2025 WL 634385, at *2 (W.D. Mich. Feb. 27, 2025))). They then make an argument to dismiss "[t]o the extent [Plaintiff's] free speech claim hinges on his inability to use the grievance process." (*Id.*). But Plaintiff's free speech claim has nothing to do with his inability to access the grievance process. It pertains to his inability to receive information and ideas. Defendants ignore these arguments and the Undersigned concludes based on an initial review of the amended complaint that Plaintiff's allegations state a claim. *See Bethel v. Jenkins*, No. 16-4185, 2017 WL 4863118, at *2–*3 (6th Cir. Sept. 22, 2017) (finding plaintiff had sufficiently stated a free speech claim for a ban on third-party orders of reading materials); *Thomas v. Dullock*, 25-cv-12758, 2026 WL 173799, at *3–*4 (E.D. Mich. Jan. 22, 2026); *Zielinski v. Annucci*, No. 17-cv-1087, 2019 WL 2479616, at *11 (N.D.N.Y. Jan. 8, 2019) ("At this juncture, [plaintiff] has adequately plead [sic] a First Amendment claim related to the right to

receive information to require a response.").

At this stage of the proceedings, the Undersigned finds Plaintiff has sufficiently pled a First Amendment claim based on access to information. Defendants have not engaged with Plaintiff's allegations and there is no information on why he is deprived from buying books in a format that would allow him to read them as sighted prisoners are able to do. *Accord Kratochvil v. Strata*, No. 24-cv-1042, 2024 WL 4895713, at *3 (M.D. Tenn. Nov. 26, 2024) (finding plaintiff had stated a claim where there was no information justifying prison's policy limiting books). The Undersigned therefore recommends denying Defendants' motion to dismiss as to Plaintiff's First Amendment claim.

### 3.    Due Process

Finally, Defendants argue Plaintiff has not adequately pled a deprivation of his due process rights. But, again, they wholly fail to address Plaintiff's specific claim, instead making general arguments about liberty interests in prison programs, educational opportunities, recreational resources, technological devices, and the grievance process. (ECF No. 25, PageID.128). As Plaintiff points out, "Defendants appear to misunderstand [his] very narrow, but specific, Due Process Clause claim." (ECF No. 27, PageID.272).

Indeed, Plaintiff's due process claim has nothing to do with his ADA claims regarding reasonable accommodations. Instead, it challenges a specific prison

26

policy as unconstitutional as applied to him. (*See* ECF No. 21, PageID.252). Without any argument from Defendants as to why this specific claim should be dismissed, the Undersigned recommends the Court deny Defendants' motion to dismiss Plaintiff's due process claim. *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) ("Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to put flesh on its bones." (citation modified)).

### F.  Conclusion

For these reasons, **IT IS RECOMMENDED** that the Court **GRANT IN PART** Defendants' joint motion for summary judgment and to dismiss (ECF No. 25) and **DISMISS** Plaintiff's First and Sixth Amendment denial of access to the courts claims, and **DENY IN PART** the motion as to Plaintiff's other claims.

## III.  REVIEW

Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further

right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this R&R. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Dakroub v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this R&R to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: April 29, 2026

s/PATRICIA T. MORRIS
Patricia T. Morris
United States Magistrate Judge

28